64 So.2d 670 (1953)
MAKOS et al.
v.
PRINCE et al.
Supreme Court of Florida, en Banc.
April 24, 1953.
*671 Hal S. Ives and Russell H. McIntosh, West Palm Beach, for appellants.
Harry A. Johnston and Henry F. Lilienthal, West Palm Beach, for appellees.
SEBRING, Justice.
Acting under the authority supposedly conferred by the provisions of section 562.14(4), Florida Statutes 1951, F.S.A., the Board of County Commissioners of Palm Beach County adopted the following resolution:
"Whereas, by resolution the Board of County Commissioners of Palm Beach County has heretofore fixed the hours of sale of alcoholic beverages within the territory of Palm Beach County not included within any municipality, and
"Whereas, officials of the cities of Belle Glade, Pahokee and South Bay have appeared before the Board and have requested the Board of County Commissioners to fix the hours of sale in the western part of the county to conform to the hours of sale fixed by the municipalities in that area,
"Now, therefore, be it resolved, by the Board of County Commissioners of Palm Beach County, Florida, in regular session assembled May 26, 1952, that in the previous resolution of this Board fixing the hours of sale of alcoholic beverages be and the same is hereby amended so that in that part of Palm Beach County, Florida, lying west of the range line between Ranges 39 and 40 and not included within the boundaries of any municipality the Board hereby fixes and declares the hours of sale of alcoholic beverages, where alcoholic beverages may be sold, consumed or served in any place holding a license under the State Beverage Department of Florida, whether bars, package stores or a combination of both, to be as follows: 8:00 o'clock a.m. until 12:00 o'clock midnight, Mondays through Fridays; 8:00 o'clock a.m. Saturdays until 1:00 o'clock a.m. Sundays.
"Be it further resolved, that except as herein amended, the previous applicable resolutions of this Board with respect to hours of sale of alcoholic beverages remain in full force and effect."
The appellants, who were liquor dealers in the rural area of the west zone fixed by the resolution, filed their bill of complaint to enjoin the Board from enforcing the resolution, on the ground that as to them the resolution was arbitrary, discriminatory and invalid.
When the cause was heard by the court on an application for the entry of a temporary injunction, the trial judge entered an order denying the application and, sua sponte, dismissed the bill of complaint without leave to amend, giving as his reasons for his decision the following:
"The court will take judicial notice of the fact that the area affected by the resolution in question is that part of Palm Beach County known as the `Everglades Section.' The area is adjacent to the towns of Port Mayaca, Canal Point, Pahokee, Belle Glade, South Bay and Lake Harbor.
"It is likewise a matter of common knowledge, of course, that such section of Palm Beach County is devoted almost entirely to the growing of sugar cane, winter vegetable crops and the raising of cattle. In this work, great hordes of migrant laborers, some of *672 whom are brought from the islands of the West Indies, are used, and live in that area. It seems entirely reasonable and proper that different hours of selling intoxicating beverages be established for that area than in the metropolitan areas making up the eastern section of the county.

"Considering at this time those things of which the court must take judicial notice, leads to the conclusion that the regulation in question is entirely proper, and that the bill of complaint is without equity." (Emphasis supplied.)
In due course the plaintiffs filed a petition for rehearing and a motion for leave to amend, tendering with the motion a proposed amended bill of complaint. In this amended bill the plaintiffs alleged a state of facts which were sufficient, if true, to establish an entirely different condition existing in Palm Beach County than the condition reflected by the state of facts recited in the order of the trial judge, of which he had taken "judicial notice," and which, if true, tended to show that in the adoption of the resolution the Board of County Commissioners had acted in an arbitrary and capricious manner, to the injury of the plaintiffs.
The petition for rehearing was denied and the plaintiffs were refused permission to file their amended bill of complaint. Thereupon, this appeal was taken.
Subsections 1 and 4 of section 562.14, Florida Statutes 1951, F.S.A., provide that "No alcoholic beverages may be sold, consumed or served or permitted to be served or consumed, in any place holding a license under the state beverage department of Florida, between the hours of midnight and seven o'clock a.m. of the following day * * * [except that] the board of county commissioners of any county of the State of Florida may, by resolution, independently regulate the hours of sale of alcoholic beverages within the territory of such county not included within any municipality notwithstanding the provisions of this section."
The first question for consideration is whether the quoted provision of the statute empowering counties to "regulate the hours of sale" of alcoholic beverages should be construed to permit a resolution establishing different hours in certain areas of a county, on the basis of reasonable grounds for classification; or whether the commissioners, in their "independent regulation," must fix hours absolutely uniform throughout the territory not included within any municipality.
The County of Palm Beach exercises no general zoning powers, although both counties and cities, under section 561.44(2) of the beverage law, may determine in what zones within their jurisdiction licenses shall or shall not be issued; and zoning regulations under the latter provision are independent of general zoning procedures. Ellis v. City of Winter Haven, Fla., 60 So.2d 620. Thus by one provision of the law a county would be authorized to prohibit the sale of liquor within certain zones, and by another would be authorized to prohibit sales within certain hours. Though not determinative of the specific question at hand, it would seem illogical to presuppose a legislative intent that licensees may be prohibited from operating in certain areas of the county but may not be subjected to varying regulations as to hours of sale.
The use of the term "independently regulate" imports, of course, the meaning that a county's regulation of hours of sale may be independent of hours set by the general law for the state at large. The argument of appellants is that even though the grant of power to regulate this particular matter is not in any way restricted, the county must nevertheless fix one schedule of hours for its entire territory without regard for any differences between areas which might warrant different regulations. We think this contention is unsound, in view of the liberal construction given the word "regulate" in our law:
"The power to regulate * * * carries full power over the thing subject to regulation, and * * * in the absence of restrictive words, the power must be regarded as plenary over the entire subject. The power to regulate may include the power to confine a business with reference to place, or *673 time * * *." (Emphasis supplied.) State ex rel. Hollywood Jockey Club v. Stein, 133 Fla. 530, 182 So. 863, 868.
In further definition, the word "regulate" has been said to mean to adjust, order or govern by rule, method, or established mode; direct or manage according to certain standards or rules. Van Ingen v. Hudson Realty Co., 106 App.Div. 444, 94 N.Y.S. 645, quoting Stand.Dict.; Weadock v. Judge of Recorder's Court of Detroit, 156 Mich. 376, 120 N.W. 991; State ex rel. Wagner v. Fields, 218 Mo. App. 155, 263 S.W. 853. It would seem that the process of regulation, like legislation, is in a sense almost always a matter of classification. Ex parte Lewinsky, 66 Fla. 324, 63 So. 577, 50 L.R.A.,N.S., 1156.
In spite of the conclusion that the quoted provision of the statute is broad enough to empower a county in the regulation of the liquor traffic to establish separate zones in a county and not to require that regulations of hours be uniform throughout the county as a whole, the law is plain that where the county may lawfully adopt such a method of regulation the power may not be exercised in an arbitrary or discriminatory manner but must be grounded upon some reasonable basis of classification with reference to the subject sought to be regulated. Seaboard Air Line Ry. v. Simon, 56 Fla. 545, 47 So. 1001, 20 L.R.A., N.S., 126; King Lbr. & Mfg. v. Atlantic Coast Line Ry. Co., 58 Fla. 292, 50 So. 509; Di Lustro v. Penton, 106 Fla. 198, 142 So. 898. Also see State ex rel. Helseth County Com'rs, v. DuBose, 99 Fla. 812, 128 So. 4.
From an inspection of the record it appears that the county commissioners adopted the challenged resolution at the request of town officials in the west zone of the county so as to make the closing hours in the rural area of that zone conform with the hours fixed by separate ordinances in each of the municipalities situated in the western portion of the county. The circuit judge found the reason given by the Board for the adoption of the resolution to be legally sufficient, because of certain social and economic differences, of which he took "judicial notice," which existed between the rural areas in the eastern and the western portions of the county. The amended bill which was tendered by the plaintiffs sought to controvert the facts which in the opinion of the trial judge gave rise to these supposed social and economic differences of which he had taken judicial notice, by alleging a state of facts designed to show that in truth such differences were nonexistent.
The established rule in respect to judicial notice is that it should be exercised with great caution. The matter judicially noticed must be of common and general knowledge. Moreover, it must be authoritatively settled and free from doubt or uncertainty. Amos v. Moseley, 74 Fla. 555, 77 So. 619, L.R.A. 1918C, 482; State ex rel. Libtz v. Coleman, 149 Fla. 28, 5 So.2d 60, and authorities therein cited.
The allegations of the amended bill are sufficient, in our opinion, to raise considerable doubt that the matters and things of which the trial judge took judicial notice have been "authoritatively settled" or that in fact they are as he "judicially noticed" them to be. However that may be, as to those matters of which the court may take judicial notice because they are matters of common knowledge, as distinguished from certain official records cf. State ex rel. Landis v. Thompson, 121 Fla. 561, 164 So. 192; and Schriver v. Tucker, Fla., 42 So.2d 707, the rule is that the fact that a matter is judicially noticed means merely that it is taken as true without the necessity of offering evidence by the party who should ordinarily have done so. This is because the court assumes that the matter is so notorious that the matter will not be disputed. But the rule does not prevent an opponent's disputing the matter by evidence if he believes it disputable. Wigmore on Evidence, 3d Ed., Section 2567, p. 535.
We conclude that under the doctrine of liberal amendments obtaining in this state the plaintiffs should have been allowed to file their amended bill and that thereupon the cause should have proceeded in accordance with law.
Accordingly, the decree appealed from is reversed with directions that the amended bill be filed and that thereafter the cause *674 proceed in accordance with law, in the light of the principles herein stated.
It is so ordered.
TERRELL, SEBRING, HOBSON and BUFORD, JJ., concur.
ROBERTS, C.J., THOMAS and MATHEWS, JJ., concur in part and dissent in part.
MATHEWS, Justice (dissenting).
In this case the county commissioners of Palm Beach County, acting under the authority of Section 562.14(4), F.S. 1951, F.S.A., passed a resolution fixing the time of sales of alcoholic beverages "within the territory of Palm Beach County not included within any municipality" from 7 o'clock A.M. to 2 o'clock A.M. the following morning, except on Sundays when the hours were from 2 o'clock P.M. to 12 o'clock midnight. Later the Board passed another resolution dividing the county into two parts, or zones, and fixing the hours of sale for intoxicating beverages by licensees as follows: 8 o'clock A.M. until 12 midnight, Mondays through Fridays; and 8 o'clock A.M. Saturdays until 1 o'clock A.M. Sundays; which hours should be effective in all of Palm Beach County lying west of range lines 37 and 40, and not included within the boundaries of any municipality. The resolution recited that the Board of County Commissioners had theretofore fixed the hours of sale of alcoholic beverages "within the territory of Palm Beach County" not included with in any municipality and the resolution in question left intact the former resolution except as modified by the latter resolution.
The case must be reversed because of the reasons pointed out in the opinion by Mr. Justice SEBRING.
However, there is a more important question to be determined, which is: Has the Board of County Commissioners of Palm Beach County the power and authority under section 562.14(4), F.S., F.S.A., to divide the county into two districts for the purpose of regulating the hours of sale of alcoholic beverages, and fix the hours of sale different in one section from those fixed in the other section? I do not agree with the opinion of Mr. Justice SEBRING on this question.
Section 562.14(1), F.S., F.S.A., is as follows:
"No alcoholic beverages may be sold, consumed or served or permitted to be served or consumed, in any place holding a license under the state beverage department of Florida, between the hours of midnight and seven o'clock a.m. of the following day."
Section 562.14(3), F.S., F.S.A., is as follows:
"Incorporated cities or towns may by ordinance independently regulate the hours of sale of alcoholic beverages within the corporate limits thereof, notwithstanding the provisions of this section."
Section 562.14(4), F.S., F.S.A., is as follows:
"The board of county commissioners of any county of the State of Florida may, by resolution, independently regulate the hours of sale of alcoholic beverages within the territory of such county not included within any municipality notwithstanding the provisions of this section."
Towns and cities are similar in many respects and are different in others. Section 1 of Article 8 of the F.S.A.Constitution reads as follows:
"The State shall be divided into political divisions to be called counties."
Section 8 of Article 8 of the Constitution is as follows:
"The Legislature shall have power to establish, and to abolish, municipalities to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. When any municipality shall be abolished, provision shall be made for the protection of its creditors."
We thus see that counties are political subdivisions of the State and declared to be so by the Constitution. With reference to cities and towns, the Legislature may *675 establish and abolish the same at will and has plenary power to provide for their governments, jurisdiction, powers and duties and to alter or amend the same at any time, unless, of course, restrained or prohibited by some provision of the Constitution of the United States or some provision of the Constitution of the State of Florida.
The two sections of the Beverage Law conferring power on municipalities and counties with reference to the hours of sale are so similar that the construction of the one will affect the construction of the other.
With reference to municipalities, they may fix the hours of sale within the territory of the municipality. With reference to counties, they may fix the hours of sale within the territory of the county and outside of the territory of any municipality in the county.
Section 5 of Article 8 provides "The powers, duties and compensation of such county commissioners shall be prescribed by law".
County commissioners have no powers other than those expressly vested in them by statute or that may be necessarily implied to carry into effect powers expressly vested. Crandon v. Hazlett, 157 Fla. 574, 26 So.2d 638; State ex rel. Landis v. Wheat, 103 Fla. 1, 137 So. 277.
It was also held in the case of Crandon v. Hazlett, supra, that where there is doubt as to the existence of authority, it should not be assumed. See also Hopkins v. Special Road & Bridge Dist. No. 4, 73 Fla. 247, 74 So. 310.
It is urged by the appellees that under the powers specifically granted by Section 562.14(4), F.S. 1951, F.S.A., to "by resolution, independently regulate the hours of sale of alcoholic beverages within the territory of such county not included within any municipality" gives the county commissioners the implied power to divide such territory into districts or zones and fix hours of sale of alcoholic beverages in one district or zone different from the hours of sale in another district or zone.
In construing section 562.14, F.S.A., we should also consider subsections (1) and (2) of Section 561.44, F.S., F.S.A., the pertinent parts of which are as follows:
"(1) Incorporated cities and towns are hereby given the power hereafter to establish zoning ordinances restricting the location wherein a vendor licensed under § 561.34 may be permitted to conduct his place of business and no license shall be granted to any such licensee to conduct a place of business in a location where such place of business is prohibited from being operated by such municipal ordinance; * * *.
"(2) The board of county commissioners of any county of the State of Florida may hereafter, by resolution, establish zones or areas, in the territory lying without the limits of incorporated cities or towns, wherein the location of a vendor's place of business licensed under this act may be permitted to be operated; * * *."
It should be noted that section 561.44, F.S., F.S.A., vests in towns, cities and counties the same identical authority to establish zones or areas in which licensed vendors may conduct the place of business. In cities and towns it is within the corporate limits of the city or town, and in counties it is "in the territory lying without the limits of incorporated cities or towns".
In the case of Simpson v. Goldworm, Fla., 59 So.2d 511, 512, the City of Miami Beach, attempting to regulate the sale of beverages, were restricting the method of sale in certain zones. The Court held:
"The Legislature has not, by general law, specifically authorized the municipalities of this state to regulate the `method of sale' of alcoholic beverages within their corporate limits; and this court has many times held that a municipality has only such power respecting the regulation and control of alcoholic beverages as is given it by the Legislature. See Singer v. Scarborough, 155 Fla. 357, 20 So.2d 126; City of Miami v. Kichinko, 156 Fla. 128, 22 So.2d 627; Fleeman v. Vocelle, 160 Fla. 898, 37 So.2d 164."
*676 In other words, the city had the right by zoning to establish zones where alcoholic beverages could, or could not, be sold, but had no express or implied authority to prescribe or fix the manner, or method, of sale different from that fixed by the general law, to-wit, by the drink, or in containers, for consumption, on or off the premises where sold.
The case of State ex rel. Hollywood Jockey Club v. Stein, 133 Fla. 530, 182 So. 863, 864, is cited as authority, for the position of the appellee. In that case the State Racing Commission adopted a rule, or regulation, providing that "Every association shall conduct horse racing only between the hours of 12 noon and 7 p.m. Eastern Standard Time." The Hollywood Jockey Club in Broward County contended that this rule or regulation would deny it the right to race at night and would, therefore, jeopardize the investment which had been made, and that the said rule was arbitrary and unlawful in that it limited the hours of the day in which it (the Club), holding a legally ratified permit, could or could not conduct racing. In its opinion the Court quoted from 53 C.J. pages 1172 to 1177, as to the meaning of the word "regulate." Among the quotations under the phrase "What Term Includes", the author of the article in Corpus Juris stated:
"The power to regulate may include the power to confine a business with reference to place, or time, * * *." See also 76 C.J.S., Regulate, pp. 610-615.
In the case of State ex rel. Hollywood Jockey Club v. Stein, supra, the rule or regulation applied to all licensed holders of racing permits and without discrimination as to place. The Jockey Club was attempting to have the rule or regulation declared to be arbitrary and discriminatory because it desired to operate at night. If the Club could have had its way, it would have had one rule for Dade County and another rule for Broward County. The rule adopted by the Racing Commission fixed the time which applied with like force and effect to all who had racing permits and without any discrimination as to when racing could be conducted in a particular place or particular county. If this case has any bearing upon the case now under consideration, it would be that the resolution adopted by the County Commissioners of Palm Beach County denies to all, having similar licenses, the equal protection of law.
Section 561.44, F.S., F.S.A., by vesting in county commissioners the authority to establish zones or areas in the territory of such county without the limits of incorporated cities or towns, did no more than grant authority to fix zones where intoxicating beverages could and could not be sold. This section did not vest any authority, expressly or impliedly, to fix hours of sale.
Section 562.14(1) fixed the hours of sale throughout the State. Subsection (3) vested in cities and towns the authority to regulate the hours of sale within the corporate limits, and subsection (4) vested in the Board of County Commissioners the authority "by resolution, independently regulate the hours of sale of alcoholic beverages within the territory of such county not included within any municipality".
The effect of these statutes construed together is that cities and towns and counties may establish by zoning resolutions within their respective limits the place where the licensee may be permitted to operate his place of business.
Section 562.14 vests the further authority to fix the hours of sale as to cities within their corporate limits and as to counties within the territory of such county not included within any municipality. It would, therefore, appear that the power and authority vested in the county is, first, to fix the zones where alcoholic beverages may be sold in the county outside the corporate limits of the municipalities, and, second, to fix the hours of sale within the territory (not zones) of such county not included within any municipality.
The power to zone and fix zones where alcoholic beverages may be sold within the county preserves in full force and effect the rights of the licensee as fixed by general law where his place of business is in a zone fixed by resolution of the county commissioners as a zone where such business may *677 be conducted. Subsection (4) of section 562.14, F.S., F.S.A., did not in any manner change the power vested in the county commissioners to fix zones where alcoholic beverages may and may not be sold. It did nothing more than vest in the county commissioners the authority to regulate the hours of sale of alcoholic beverages within the territory (not zones) of such county, not included in a municipality. The words "territory of such county" cannot be construed to mean "in the various districts or zones of such county." It may be that the Legislature can vest in towns, cities, and counties the authority to establish and fix different hours of sale in the different districts and zones of such towns, cities or counties, but the Legislature has not so vested such authority by the statutes now under consideration. There is no implied power in the county commissioners to zone the county for the purpose of fixing the hours of sale at different times in the various zones. Therefore, the resolution of the Board of County Commissioners of Palm Beach County fixing different zones and different hours of sale in such zones was an assumption of power not granted and the resolution is null and void.
If the county commissioners had authority to fix zones and districts within the territory of the county, and to fix different hours of sale for different zones or districts, then the final decree should be reversed for the reasons set forth in the opinion by Mr. Justice SEBRING.
ROBERTS, C.J., and THOMAS, JJ., concur.